FILED
2016 Mar-15  PM 01:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHERYL MALANIE GARNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:14-CV-2177-VEH** |
| | ) | |
| **CAROLYN W. COLVIN, ACTING** | ) | |
| **COMMISSIONER, SOCIAL** | ) | |
| **SECURITY ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION

### INTRODUCTION

Plaintiff Cheryl Malanie Garner brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for Disability Insurance Benefits ("DIB"). Garner timely pursued and exhausted her administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g). For the following reasons, the court **AFFIRMS** the Commissioner's decision.

### STATEMENT OF THE CASE

Garner was 49 years old at the time of her hearing before the Administrative Law Judge ("ALJ"). (Tr. 140). She has completed the 12th grade. (*Id.*). Her past work

experience includes employment as a case aide. (Tr. 26–27). She claims she became disabled on February 8, 2012, due to arthritis, diabetes, HBP, and neuropathy. (Tr. 21; 248). Her last period of work ended on February 8, 2012. (Tr. 21).

On February 8, 2012, Garner protectively filed a Title II application for a period of disability and DIB. (Tr. 19). Garner timely filed a written request for a hearing on May 23, 2012. (Tr. 128). The ALJ conducted a hearing on the matter on May 6, 2013. (Tr. 33). On May 14, 2013, he issued his opinion concluding Garner was not disabled and denying her benefits. (Tr. 16). She timely petitioned the Appeals Council to review the decision on June 10, 2013. (Tr. 15). On September 10, 2014, the Appeals Council issued a denial of review on her claim. (Tr. 1).

Garner filed a Complaint with this court on November 10, 2014, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on February 17, 2015. (Doc. 9). Garner filed a supporting brief (doc. 12) on April 3, 2015, and the Commissioner responded with her own (doc. 13) on May 4, 2015.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219,

1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;

(2)    whether the claimant has a severe impairment;

(3)    whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4)    whether the claimant can perform his or her past work; and

(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).   The sequential analysis goes as follows:

4

Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## ALJ FINDINGS

After consideration of the entire record, the ALJ made the following findings:

1.  The claimant met the insured status requirements of the Social Security Act through December 31, 2015.

2.  She had not engaged in substantial gainful activity since February 8, 2012, the amended alleged disability onset date.

3.  She had the following severe impairments: diabetes, diabetic neuropathy, lumbar degenerative disc disease, and history of right rotator cuff repair.

4.  She did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.  She had the residual functioning capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except she can never operate foot controls bilaterally; can never climb ladders, ropes, or scaffolds; can

5

occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; must avoid concentrated exposure to extreme temperatures, wetness, and humidity; and must avoid all exposure to hazards such as operational control of moving machinery, hazardous machinery, and unprotected heights.

6.      She was unable to perform any past relevant work.

7.      She was born on [redacted], 1963 and was 48 years old, which is defined as a younger individual, on the alleged disability date.

8.      She had at least a high school education and was able to communicate in English.

9.      Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that she was "not disabled," whether or not she had transferable job skills.

10.     Considering her age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that she could perform.

11.     Garner had not been under a disability, as defined in the Social Security Act, from January 1, 2011, through the date of this decision.

(Tr. 21–28).

## DISCUSSION

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). However, the court "abstains  from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Garner urges this court to reverse the Commissioner's decision to deny her benefits on two grounds: First, the ALJ erred in rejecting the opinion of Physician Assistant Benjamin Dale, and, second, the ALJ erred in failing to develop the record. (Doc. 12).[1]

---

[1]  The Commissioner sees an additional argument in favor of reversal in Garner's brief—a suggestion that the ALJ failed to adequately address each area of functioning under SSR 96-8p, 1996 WL 374184 (June 2, 1996). The closest thing of the sort that I can find is Garner's suggestion that, without a medical source opinion, it is impossible to evaluate RFC in conformity with SSR 96-8p. (*See* Doc. 12 at 11). I do not read Garner's statement as saying this ALJ, in particular, failed to comply with 96-8p; rather, she seems to say that as a practical matter, no ALJ could comply with SSR 96-8p without a medical source opinion, so a medical source opinion is a prerequisite to any valid administrative decision. But the premise of Garner's position is false (she even admits this); a medical source opinion is not the *sine qua non* of a defensible ALJ decision, even as a practical matter. *See Williams v. Colvin*, No. 7:12-4101-VEH, 2014 WL 358729, at *4 (N.D. Ala. Jan. 31, 2014) (Hopkins, J.) ("There is no bright line rule about when the ALJ must request a medical source opinion from a physician."). Of course, were all men mortal then Socrates would be too, but because Garner's categorical indictment of any ALJ's ability to comply with SSR 96-8 falls flat,

The first urged ground is insufficient to warrant reversal. To the extent it is Garner's argument that, where the opinion of an acceptable medical source is unavailable, the Commissioner is required to make do with an unacceptable source (lest the ALJ usurp the medical experts), I emphatically reject it. The absence of sufficient proof does not allow a claimant to transmute weak evidence into strong. The burden of establishing the existence of a disability rests with the claimant. *See Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded on other grounds by statute*, Social Security Disability Benefits Reform Act of 1984, Pub. L. No. 98–460, 98 Stat. 1794 (1984), *as recognized in Hand v. Heckler*, 761 F.2d 1545, 1548 n. 4 (11th Cir. 1985), *vacated on other grounds by Parker v. Heckler*, 774 F.2d 428 (11th Cir. 1985).

Further, the ALJ properly concluded that Dale's opinion is due no particular weight. *See* 20 C.F.R. § 404.1513(a) (identifying acceptable medical sources). While Garner correctly points out that a Physician Assistant's opinion, like Dale's, may be considered in determining the severity of a claimant's impairments, *see* 20 C.F.R. § 404.1513(d)(1), the ALJ's determination that Dale's opinions were not supported by his treatment records is supported by substantial evidence. The only treatment records containing substantive commentary by Dale were from October 2012 and May 2011. The 2012 note shows that Lyrica helped with Garner's neuropathy pain although it did not

there is little reason to be concerned with whether this ALJ complied with 96-8. The individualized argument is not one that Garner raised, and I will not consider it.

8

eliminate it entirely, and that she had no pitting edema in her legs. (Tr. 481).[2] The 2011 record did not mention her hand strength. (Tr. 440). On this record, the ALJ could properly conclude that Dale's claims that Garner could not lift more than five pounds (a little more than a half gallon of milk) were inconsistent with Dale's treatment records; if she were truly so incapacitated, one would expect the treatment records to say something about it.

Further, the consultative examination by Dr. Celtin Robertson on April 25, 2012, does nothing to support Dale's opinions. Dr. Robertson found that Garner's motor strength is 5/5, she has the ability to grasp and manipulate large and small objects with the first three digits, sensation to touch is normal, and there was no evidence of tenderness, erythmea, or effusion. (Tr. 467).

Garner's second ground for reversal fares no better. She suggests that the ALJ could have more fully developed the record by clarifying the consultative or treating source opinions, obtaining an additional medical source opinion, or obtaining a medical expert's opinion. (Doc. 12 at 9). This argument can be disposed of by noting that Garner was represented by counsel for over a year before the ALJ rendered his decision (meaning there was no "special" duty to develop the record on the part of the ALJ, *see*

---

[2] An emergency room record dated February 4, 2006, reflected Garner's reduced grip strength. (Tr. 304). This record is well before her alleged onset of disability and says nothing about the magnitude of reduction in strength, making it worthless as proof of disability.

*Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997)), and to reverse for failure to develop the record, the claimant must show prejudice—which Garner has not. *See id.*

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the decision of the Commissioner is supported by substantial evidence and that she applied proper legal standards in arriving at it. Accordingly, the decision will be affirmed by separated order.

**DONE** and **ORDERED** this the 15th day of March, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge